UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
HENRIETTA D., NIDIA S., SIMONE A.,
EZZARD S., JOHN R., AND PEDRO R.,
on behalf of themselves and all others
similarly situated,
                          Plaintiffs,

     – against –                                                          CV-95-0641(SJ) (CP)

MICHAEL BLOOMBERG, as Mayor of the City of New
York, ROBERT DOAR, as Commissioner of the New York
City Human Resources Administration, and ELIZABETH
R. BERLIN, as Executive Deputy Commissioner of the
New York Office of Temporary and Disability Assistance,
                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ENFORCEMENT ORDER

| | |
|---|---|
| HOUSING WORKS, INC. | HIV LAW PROJECT |
| Armen H. Merjian (AM 3985) | Cynthia Knox (CK 2240) |
| 320 W. 13th Street, 4th Floor | 15 Maiden Lane |
| New York, NY 10014 | New York, NY 10038 |
| (212) 645-8111 x4167 | (212) 577-3001 |
| | |
| VIRGINIA SHUBERT, ESQ. | EMERY CELLI BRINCKERHOFF & ABADY LLP |
| Virginia Shubert (VS 3724) | Matthew Brinckerhoff (MB 3552) |
| 75 Rockefeller Plaza, 20th Floor | Zoe Salzman (ZS 9816) |
| New York, N.Y. 10019 | 75 Rockefeller Plaza, 20th Floor |
| (212) 763-5022 | New York, N.Y. 10019 |
| | (212) 763-5000 |

                                  Attorneys for Plaintiffs
                                  Dated: June 22, 2010

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT.................................................................................................................................8

    I.    THIS COURT SHOULD IMMEDIATELY RESTRAIN DEFENDANTS FROM IMPLEMENTING THEIR ILLEGAL POLICY.........................................8

        A.    Defendants' Illegal Proposal Will Cause Plaintiffs Irreparable Harm.........8

        B.    Plaintiffs Have Already Succeeded on the Merits: This Case Was Exhaustively Litigated, and This Court Expressly Ruled on This Very Matter, Repeatedly. ..........................................................................................9

CONCLUSION............................................................................................................................15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
HENRIETTA D., NIDIA S., SIMONE A.,
EZZARD S., JOHN R., AND PEDRO R.,
on behalf of themselves and all others
similarly situated,
                       Plaintiffs,

      – against –                                      CV-95-0641(SJ) (CP)

MICHAEL BLOOMBERG, as Mayor of the City of New York,    **MEMORANDUM OF LAW**
ROBERT DOAR, as Commissioner of the New York              **IN SUPPORT OF MOTION**
City Human Resources Administration, and ELIZABETH    **FOR TEMOPORARY**
R. BERLIN, as Executive Deputy Commissioner of the        **RESTRAINING ORDER**
New York Office of Temporary and Disability Assistance,    **AND ENFORCEMENT**
                                                                                              **ORDER**

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PRELIMINARY STATEMENT**

      Undeterred by this Court's orders expressly requiring minimum case manager-to-client ratios, Defendants have proposed the imminent elimination – any day now – of 248 case managers at the HIV/AIDS Services Administration ("HASA") (formerly known as the Division of AIDS Services and Income Support, or "DASIS"). This constitutes nearly one-third of all HASA case managers. If implemented, Defendants' plan will not only violate this Court's orders (although it will do that – and blatantly), but it will also eviscerate the agency, thus rendering HASA even more grossly dysfunctional than this Court adjudged HASA to be, "unequivocally," at trial, prior to the imposition of case manager-to-client ratios. It would also immediately usher in a return to the "devastating consequences" to which Defendants subjected Plaintiffs for so many years. The harm would be irreparable. Plaintiffs thus do not have the luxury of waiting to bring a contempt motion after the fact.

As this Court found, the intensive case management that HASA employees provide to Plaintiffs through low case manager-to-client ratios is a reasonable accommodation of Plaintiffs' disabilities, a "ramp" to ensure meaningful and equal access to the subsistence benefits they and their families require to stay alive: food, shelter, and medication to fight their illness and its accompanying maladies. Dismantling that ramp would not merely be unconscionable, but a blatant violation of this Court's orders and the various laws that this Court adjudged Defendants to have violated as a result of ballooning caseload ratios. It would also violate Defendants' existing obligations under New York City Local Law 49 of 1997. The order in this case conservatively incorporated the existing caseload ratios mandated by Local Law 49. That law has never been changed, and remains in full force and effect.

Plaintiffs seek immediate relief to prevent Defendants from massively violating this Court's orders and the underlying law. "You don't tell a Federal Court to go to hell." James v. City of New York, 1998 WL 677583, at *2 (S.D.N.Y. Sept. 28, 1998). If Defendants are not expressly enjoined from implementing their plan, Plaintiffs will once again suffer irreparable harm, of the precise nature already recognized by this Court. And, given that this issue has already been exhaustively litigated and expressly decided by this Court, Plaintiffs have already succeeded on the merits of their claim. Defendants have cited budgetary considerations, but the law is clear: budgetary constraints cannot excuse noncompliance with federal law – and federal court orders.

## STATEMENT OF FACTS

**A.  As This Court Found, Defendants' Previous Dismantling of Intensive Case Management, i.e., the Ramp to Subsistence Benefits and Services, Led to Chronic and Systematic Violations, with "Devastating Consequences."**

Plaintiffs brought this lawsuit in 1995 precisely because the case manager-to-client ratios at DASIS (now known as HASA) had ballooned so high as to render the agency chronically dysfunctional, leading to widespread, irreparable harm. "To ensure that [HASA] clients have meaningful and equal access to HRA benefits and services," Plaintiffs explained, "the City defendants established the low caseloads in light of the special needs of [HASA] clients." (Second Am. Compl., dated March 25, 1995, ¶ 49.)  HASA was created to provide, through the utilization of low case manager-to-client ratios, "integrated, expedited services to minimize the impact on this vulnerable and progressively dependent population," and to negotiate "the bureaucracy to ensure its responsiveness to client needs, clients who are often too ill to accomplish this on their own, and to ensure maximum cooperation in access to benefits."  (Id. ¶ 38; internal quotations omitted.)

The failure to provide appropriate staffing "left the agency unable to provide the lower case loads, specialized training, and benefits coordination that have enabled persons disabled by HIV/AIDS to access entitlements and services that they are entitled to receive in the time required by law."  (Id. ¶ 68.)  Plaintiffs continued to suffer these violations for over a half-decade, until proving at trial "unequivocally that defendants are chronically and systematically failing to provide plaintiffs with meaningful access to critical subsistence benefits and services, with devastating consequences." Henrietta D. v. Giuliani, 119 F. Supp. 2d 181, 209 (E.D.N.Y. 2000), aff'd, 331 F.3d 261 (2d Cir. 2003), cert. denied 541 U.S. 936 (2004).  Accord Henrietta D. v. Giuliani, 95 CV 0641, U.S. Dist. LEXIS 21848, at *22 (E.D.N.Y. Dec. 19, 2001) ("[T]his

3

Court specifically found that Plaintiffs are being irreparably harmed by City Defendants' failure to provide Plaintiffs with meaningful access to critical subsistence benefits and services. This failure has devastating consequences for Plaintiffs.").

In doing so, Defendants violated Plaintiffs' rights under the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act, the Medicaid and Food Stamps Acts, New York State statutes and directives, and the state and federal constitutions. "At this time," this Court explained, "the Court finds that plaintiffs demonstrated at trial that the ramp that DASIS purports to be is broken, i.e., that defendants are failing to make the reasonable accommodations necessary to ensure plaintiffs meaningful access to, and an equal opportunity to benefit from, the social welfare benefits and services that defendants provide to eligible New York City residents." Henrietta D., 119 F. Supp. 2d at 209.

**B.  This Court Orders Defendants to Comply with Mandatory Case Management Ratios.**

Following the Second Circuit remand in April 2001,[1] Magistrate Judge Pollak crafted an order adopted by this Court and issued on December 11, 2001 (the "Order"). The Order provides, in relevant part, as follows:

> 1. The City of New York, through the Division of AIDS Services and Income Support ("DASIS") or its functional or legal equivalent, shall (a) provide access to public benefits and services to every person with clinical/symptomatic HIV illness or with AIDS who requests assistance and (b) ensure the provision of public benefits and services to eligible persons with clinical/symptomatic HIV illness or with AIDS, and (c) comply with all legally-mandated time frames for the delivery of benefits and services. . . .
>
> 2. DASIS shall provide eligible persons with clinical/symptomatic HIV illness or with AIDS with intensive case management, with an average ratio at each field office of DASIS that shall not exceed one caseworker or supervisor to 25 family

---

[1] In April 2001, the Second Circuit dismissed Defendants' initial appeal and remanded the case to this Court for the entry of an order, finding that this Court had entered a judgment in 2000, but not yet an order. Henrietta D. v. Giuliani, 246 F.3d 176 (2d Cir. 2001). This Court entered that Order in December 2001, as discussed infra.

4

cases, and with an overall average ratio for all cases at each field office of DASIS that shall not exceed one caseworker or supervisor to 34 cases. Defendants shall hire, train, and employ sufficient caseworkers and supervisors to achieve these mandated ratios.

Henrietta D. v. Guiliani, 95 CV 641, 2001 U.S. Dist. LEXIS 21834, at *4-5 (E.D.N.Y. Dec. 11, 2001), aff'd, 331 F.3d 261 (2d Cir. 2003), cert. denied 541 U.S. 936 (2004).

This Order sensibly and conservatively incorporated existing obligations set forth in New York City law, for in 1997, while this case was pending, the New York City Council passed Local Law 49, requiring the City to provide HASA clients with intensive case management and fixed case manager-to-client ratios, i.e., the "ramp" that Defendants were already required to provide Plaintiffs under the ADA and the Rehabilitation Act. Henrietta D., 2001 U.S. Dist. LEXIS 21848, at *24 ("[T]his Court determined in its Memorandum and Order that [HASA] was created to serve as a reasonable accommodation to Plaintiffs' disability, a 'ramp,' as it were, to assist them in accessing and maintaining the social welfare benefits and services to which they are entitled.") (citation and internal quotations omitted); Henrietta D., 119 F. Supp. 2d at 203 ("[T]he DASIS Law [Local Law 49] also requires DASIS to provide 'intensive case management,' with low case-manager-to-client ratios and specific timeliness requirements to provide meaningful and equal access to public benefits and services for its clients.") (citations omitted).

The Second Circuit fully affirmed this Court's (2000) decision and (2001) Order: "The law provides for intensive case management, for low client-caseworker ratios, and for imposition of clear deadlines. We thus share the District Court's view that the plaintiffs have established that requiring DASIS to comply with [Local Law 49] represents appropriate reasonable accommodation relief." Henrietta D. v. Bloomberg, 331 F.3d 261, 281 (2d Cir. 2003), cert. denied 541 U.S. 936 (2004).

**C.      In the Face of Defendants' Persistent Noncompliance, This Court Issued Another Order Mandating Compliance with the Caseload Ratios.**

Four years of Court-ordered monitoring ensued,[2] with Defendants observing the Order in the breach. (Merjian Decl. ¶ 8.) In June of 2002, this Court observed:

> The reports demonstrate that even now, almost two years after the initial finding by the district court of noncompliance and more than six months after the court issued its Order requiring the City to bring its case management ratios into compliance, the City's progress in attempting to bring itself into compliance has been woefully inadequate. The ratio of clients to case workers at certain centers in particular remains significantly higher than the ratios allowed by law.

(See Order, dated June 28, 2002, at 2; a copy of this Order is annexed to the accompanying Declaration of Armen H. Merjian, dated June 22, 2010 ("Merjian Declaration") as Ex. A.) This Court rejected Defendants' argument that Defendants were unsure of their obligations under the Order: "The defendants' argument is specious in that they have been on written notice of what was to be done as far back as the district court's order of December 2001 and arguably even earlier given the district court's September 2000 decision." (Id. at 3.)

Accordingly, this Court issued a <u>further</u> order (the "2002 Order") mandating that Defendants immediately take the necessary steps to come into compliance with the mandatory case management ratios at each HASA center. (Id. at 4-5.) The Court added that, "in light of the additional time being given to the City, there will be no basis for a finding of good cause in failing to comply." (Id. at 4.)

**D.      Defendants Now Propose to Eviscerate HASA, Eliminating Hundreds of Case Managers in Deliberate Violation of This Court's Orders, and the Law.**

In deliberate, perhaps unprecedented violation of this Court's Orders, Defendants have

---

[2]  This Court ordered three years of monitoring; however, because monitoring began before the Order was issued, the monitoring period actually lasted for four years.

6

announced the imminent elimination of 248 HASA case managers, or nearly one-third of all HASA staff. (See Merjian Decl. ¶ 11.) As HRA Commissioner Doar recently explained to the New York City Council, as part of ongoing "budget reduction exercises," Defendants "will reduce 248 HASA case management staff through attrition and redeployment." (See id.) [3] This echoes the precise eliminations proposed by Defendant Mayor Bloomberg in his 2011 Executive Budget. (Id.) The illegal elimination of positions may begin any day, since the budget will imminently be finalized. (Id.) In fact, the eliminations may already have begun. (Id.)

In other words, Defendants are on the brink of flouting this Court's Orders and destroying the "ramp" over which this very lawsuit was prosecuted for nearly a decade, reaching all the way up to the United States Supreme Court. In addition, after four years of careful monitoring by Magistrate Judge Pollak, who labored tirelessly to bring Defendants into compliance with the mandatory ratios for the entire monitoring period, Defendants have proposed to simply eliminate hundreds of HASA case managers, as if this lawsuit, this Court's Orders, and nearly a decade of struggle by the Plaintiff class never happened. (See Merjian Decl. ¶ 12.) If allowed to proceed, this would, in fact, constitute a blatant case of contempt. It would also eviscerate HASA, and usher in "devastating consequences" beyond even those that the Plaintiff class suffered for years before securing this Court's Orders. (See id. ¶ 13.)

---

[3] Commissioner Doar's bald suggestion that non-HASA, non-governmental, community-based, supportive housing social workers should now, suddenly be counted as HASA case managers is refuted by the express provisions of the Order. The Order clearly requires that HASA, and employees hired, trained, and employed by HASA, provide Plaintiffs with intensive case management, at each HASA field office, to ensure equal and meaningful access to governmental benefits and services. This issue has already been decided and constitutes law of the case. Accordingly, Plaintiffs will not proceed here to address the fundamental illogic of the Commissioner's suggestion.

7

**ARGUMENT**

**I.    THIS COURT SHOULD IMMEDIATELY RESTRAIN DEFENDANTS FROM IMPLEMENTING THEIR ILLEGAL POLICY.**

The standard for obtaining a temporary restraining order ("TRO") under Fed. R. Civ. P. 65 is the same as for a preliminary injunction. See, e.g., Spencer Trask Software & Info. Srvs., LLC v. RPost Int'l, Ltd., 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002). "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" My Webgrocer LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (quoting Merkos L'Inyonei Chinuch, Inc. v . Ostar Sifrei Lubavitch, Inc., 312 F.3d 94, 96 (2d Cir. 2002)). Plaintiffs amply satisfy each of these requirements.

**A.    Defendants' Illegal Proposal Will Cause Plaintiffs Irreparable Harm.**

Perhaps uniquely, this Court has already determined that the failure to comply with the mandatory caseload ratios, and thus to provide Plaintiffs with a ramp to their subsistence benefits and services, has caused and will cause irreparable harm and indeed "devastating consequences." Henrietta D. v. Giuliani, 119 F. Supp. 2d 181, 209 (E.D.N.Y. 2000), aff'd, 331 F.3d 261 (2d Cir. 2003), cert. denied 541 U.S. 936 (2004).[4]  In fact, in considering, and rejecting, Defendants'

---

[4] Courts have consistently held that the protracted denial of aid constitutes immediate and irreparable harm. See, e.g., Reynolds v. Giuliani, 35 F. Supp. 2d 331, 339 (S.D.N.Y 1999); Morel v. Giuliani, 927 F. Supp. 622, 635 (S.D.N.Y. 1995); Brown v. Giuliani, 158 F.R.D. 251, 264 (E.D.N.Y. 1994).  Indeed, the consequences of mistakes or unlawful policies in the social service arena are more harmful than if they are made in other government programs because the ability of people to survive may be jeopardized. See, e.g., Goldberg v. Kelly, 397 U.S. 254, 264 (1970) (stating that "[s]ince [a welfare recipient] lacks independent resources, his situation becomes immediately desperate"; in such situations, even the loss of a small portion of welfare benefits can constitute irreparable injury warranting issuance of a preliminary injunction); Hurley v. Toia, 432 F. Supp. 1170, 1176-78 (S.D.N.Y. 1977) ("[P]laintiffs will suffer not only irreparable harm, but also 'extreme' and 'very serious damage' if their assistance benefits are erroneously terminated.") (citations omitted), aff'd, 573 F.2d 1291 (2d Cir. 1977);

motion for a stay, this Court specifically concluded that the failure to provide a fully staffed and functioning HASA had caused and would continue to cause irreparable harm:

> In granting Plaintiffs' request for a permanent injunction, this Court specifically found that Plaintiffs are being irreparably harmed by City Defendants' failure to provide Plaintiffs with meaningful access to critical subsistence benefits and services. This failure has devastating consequences for Plaintiffs. In this case, a stay will only prolong Plaintiffs' substantial injury.

Henrietta D. v. Giuliani, 95 CV 0641, 2001 U.S. Dist. LEXIS 21848, at *22 (E.D.N.Y. Dec. 11, 2001) (emphasis added). Accord Henrietta D., 119 F. Supp. 2d at 209 ("[D]efendants are chronically and systematically failing to provide plaintiffs with meaningful access to critical subsistence benefits and services, with devastating consequences.").

Terminating nearly one-third of all current HASA case managers would cause the Plaintiffs irreparable harm beyond measure.

### B. Plaintiffs Have Already Succeeded on the Merits: This Case Was Exhaustively Litigated, and This Court Expressly Ruled on This Very Matter, Repeatedly.

As this Court has determined, intensive case management, with low caseload ratios as prescribed by this Court, constitutes the ramp that Defendants are required to provide Plaintiffs to ensure equal and meaningful access to the benefits and services to which they are entitled.

---

Lyons v. Weinberger, 376 F. Supp. 248, 262-63 (S.D.N.Y. 1974) ("[R]etroactive [welfare] payments could not adequately compensate claimants."); Boddie v. Wyman, 323 F. Supp. 1189, 1193 (N.D.N.Y. 1970) (stating that without welfare benefits, "when the day passes the injury or harm that may occur is irreparable"), aff'd, 434 F.2d 1207 (2d Cir. 1970), aff'd, 402 U.S. 991 (1971). Accord Lovely H. v. Eggleston, 235 F.R.D. 248 (S.D.N.Y. 2006) (issuing injunction based upon "[t]he risk of irreparable harm in the form of loss of vital subsistence benefits"); Brown, 158 F.R.D. at 264 ("The affidavits submitted by the named plaintiffs vividly portray the irreparable consequences to them . . . when welfare moneys are not forthcoming in a timely fashion. . . ."); Reynolds, 35 F. Supp. 2d at 339 (noting that because "defendants' practices continue to endanger numerous individuals in need of public assistance," the risk of harm is substantial). Here, Plaintiffs, all of whom are living with AIDS, stand to lose access to the benefits and services upon which they rely to eat, to clothe themselves, to combat their illness, to house themselves, to attend social service and medical appointments, and to survive in New York City. (Merjian Decl. ¶ 13.)

9

Defendants' proposal to tear down this ramp is a blatant violation of the law,[5] and most importantly, of this Court's Orders.

> The 2001 Order is clear and unambiguous. It provides, in relevant part, as follows:
>
> 1. The City of New York, through the Division of AIDS Services and Income Support ("DASIS") or its functional or legal equivalent, shall (a) provide access to public benefits and services to every person with clinical/symptomatic HIV illness or with AIDS who requests assistance and (b) ensure the provision of public benefits and services to eligible persons with clinical/symptomatic HIV illness or with AIDS, and (c) comply with all legally-mandated time frames for the delivery of benefits and services. . . .
>
> 2. DASIS shall provide eligible persons with clinical/symptomatic HIV illness or with AIDS with intensive case management, with an average ratio at each field office of DASIS that shall not exceed one caseworker or supervisor to 25 family cases, and with an overall average ratio for all cases at each field office of DASIS that shall not exceed one caseworker or supervisor to 34 cases. Defendants shall hire, train, and employ sufficient caseworkers and supervisors to achieve these mandated ratios.

Henrietta D. v. Guiliani, 2001 U.S. Dist. LEXIS 21834, at *4-5. As explained in the Statement of Facts, supra, in 2002, this Court issued a further order reiterating Defendants' obligation to comply with the mandatory caseload ratios. (See Statement of Facts, supra.) In fact, the Court threatened City Defendants with contempt for failing to comply with the Order, informing Defendants that if they failed to come into compliance "with the staffing ratios required by law . . . , this Court will recommend to the district court that sanctions be imposed upon the City for its failure to comply with the district court's December 11, 2001 Order." (2002 Order, at 4; Merjian Decl. Ex. A.)[6]

---

[5] Because this issue has already been litigated and expressly decided by this Court, Plaintiffs will eschew any discussion of Defendants' violation of the underlying laws and focus on this Court's Orders, which explicitly govern the question at hand.

[6] The Order clearly provides that "State Defendant shall supervise City Defendants' provision of benefits and services in accordance with Paragraph 1 of this Order." Id. at *9. As this Court has clearly established, where City Defendants have violated the law, State Defendants have failed properly to supervise City Defendants. Henrietta D. v. Giuliani, 119 F. Supp. 2d at 216 ("As this Court has previously ruled, under New York State law, State Defendant has a duty to supervise City defendants in the provision of public benefits and services. . . . Hence, if

10

Notably, this Court rejected Defendants' attempt to evade the caseload ratios, or to terminate the requirement to provide intensive case management at the end of the monitoring period of December 2004:

> The City argues that it should not be tied to a ratio established in a local law that is subject to change and given the advances in medical science, the City argues that such services may not be necessary in the future. The City proposes a sunset clause that would terminate the requirement to provide "intensive case management" at the time the monitoring terminates. While we might hope that the day comes soon when AIDS will no longer plague the population with its devastating consequences, nothing cited to this Court suggests that a three-year time frame is reasonable or that there will be no need in the near future for the services provided by DASIS. To the contrary, the City's own case statistics demonstrate that the problems faced by AIDS and HIV-infected clients are increasing rather than declining.

Henrietta D. v. Giuliani, 95 CV 0641, 2001 U.S. Dist. LEXIS 21849, at *35 (E.D.N.Y. July 18, 2001).

Indeed, this Court ruled that a fully staffed HASA – in compliance with the mandatory caseload ratios – is essential to providing class members with equal and meaningful access to their subsistence benefits. "Without a fully functioning [HASA]," this Court ruled, "City Defendants cannot provide plaintiffs with an 'equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.'" Henrietta D., 2001 U.S. Dist. LEXIS 21848, at *24. As Magistrate Judge Pollak observed: "Clearly, the court found a significant correlation between the City's failure to provide services and the lack of sufficient employees to handle the caseload." Henrietta D., 2001 U.S. Dist. LEXIS 21849, at *32. Accord id. at *34-35 ("To require the City to maintain these ratios at each

---

City defendants have violated plaintiffs' rights under the federal disability statutes, then State defendant, as City defendants' principal, and as their supervisor, is also liable.") (citations and internal quotations omitted). State Defendant is therefore a proper party to this motion, for State Defendant is legally required to supervise City Defendants, and to ensure that City Defendants comply with the law and with this Court's Orders.

11

center is not unreasonable in light of the numerous problems found by the court and the correlation between low caseworker-client ratios and the failure to provide services.").

Eliminating 248 HASA case managers would plainly violate this Court's Orders, including the following provisions:

> (i) Defendants, "through [HASA] . . . shall (a) provide access to public benefits and services to every person with clinical/symptomatic HIV illness or with AIDS who requests assistance . . . ."
>
> (ii) [HASA] shall provide eligible persons with clinical/symptomatic HIV illness or with AIDS with intensive case management, with an average ratio at each field office of [HASA] that shall not exceed one caseworker or supervisor to 25 family cases, and with an overall average ratio for all cases at each field office of [HASA] that shall not exceed one caseworker or supervisor to 34 cases.
>
> (iii) "Defendants shall hire, train, and employ sufficient caseworkers and supervisors to achieve these mandated ratios."

Henrietta D., 2001 U.S. Dist. LEXIS 21834, at *4-5 (emphasis added).

Plaintiffs note, moreover, that Defendants' proposal also unequivocally violates Local Law 49, which continues in full force and effect, and which requires Defendants to maintain the very same caseload ratios, concomitant with the Order in this case (which was of course patterned after Local Law 49). See New York City Admin. Code §21-127 ("The commissioner shall direct staff of the division of AIDS services to provide persons with clinical/symptomatic HIV illness . . . or persons with AIDS . . .: (i) intensive case management with an average ratio which shall not exceed one caseworker or supervisor to twenty-five family cases, and with an overall average ratio for all cases which shall not exceed one caseworker or supervisor to thirty-

four cases . . . .") Similarly, Local Law 49 mandates that such case management must be provided by HASA staff. N.Y. City Admin. Code §21-128(1) ("'Access to benefits and services' shall mean the provision of assistance by staff of the division to a person with [AIDS] at a single location in order to apply for publicly subsidized benefits and services, to establish any and all elements of eligibility . . . and to maintain such eligibility . . . .") (emphasis added).

In fact, in Hernandez v. Barrios-Paoli, 93 N.Y.2d 781 (1999), the New York Court of Appeals expressly ruled that, under the law, all welfare case management must be provided by HASA staff. In prohibiting the use by HASA (then known as DASIS) of non-HASA staff (i.e., "EVR investigators") in the provision of benefits and services to HASA clients, the Court of Appeals explained: "The statutory language makes clear that DASIS staff, rather than EVR investigators, must provide and ensure access to benefits and services . . . ." Id. at 786 (emphasis in original).

Defendants have announced that this massive evisceration of HASA is a part of ongoing "budget reduction exercises" (see Merjian Decl. ¶ 11), and they will undoubtedly cite fiscal constraints. It is well established, however, that the rights of the poor do not shrink with shrinking revenues, and that budgetary constraints cannot excuse noncompliance with federal law – and federal court orders. See, e.g., Independent Living Ctr. of Southern Cal. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009) (acknowledging California's fiscal crisis but ruling: "A budget crisis does not excuse ongoing violations of federal law, particularly when there are no adequate remedies available other than an injunction."); Doe v. Chiles, 136 F.3d 709, 722 (11th Cir. 1998); Arkansas Medical Society, Inc. v. Reynolds, 6 F.3d 519, 531 (8th Cir. 1993) ("[T]he state may not ignore the Medicaid Act's requirements in order to suit budgetary needs."); Robertson v. Jackson, 972 F.2d 529 (4th Cir. 1992) (affirming district court decision, at 766 F.

13

Supp. 470, 476 (E.D. Va. 1991), declaring: "Lack of staff or funds is not legally excusable, and this Court will not consider these hurdles in formulating a decree that mandates full compliance with federal law."); Amisub (PSL), Inc. v. State of Col. Dep't of Soc. Svcs., 897 F.2d 789, 800 (10th Cir. 1989) ("[B]udgetary constraints cannot excuse noncompliance with federal Medicaid law."); Alabama Nursing Home Assoc. v. Harris, 617 F.2d 388, 396 (5th Cir. 1980) ("Inadequate state appropriations do not excuse noncompliance [with federal standards for Medicaid]."); Peppers v. McKenna, 611 F.2d 373 (6th Cir. 1979) (affirming district court decision rejecting state's argument that it lacked sufficient funds to comply fully with federal law); Barrett v. West Chester Univ., 636 F. Supp. 2d 439, 444 (E.D. Pa. 2009) ("[E]conomic distress does not justify federal civil rights violations."); Boulet v. Cellucci, 107 F. Supp. 2d 61, 79-80 (D. Mass. 2000) ("[A]s several courts have pointed out, inadequate funding does not excuse failure to comply with the reasonable promptness requirement.") (citation omitted); Haskins v. Stanton, 621 F. Supp. 622, 629 (N.D. Ind. 1985) ("The Court recognizes that granting injunctive relief may cause an increase in administrative work and may require changes in State agency personnel and procedures to correct the violations of the Food Stamp Act. This inconvenience cannot and does not outweigh the rights and needs of low-income households who are eligible for relief but whose relief has been blocked or delayed by defects in the Indiana DPW's application procedures."), aff'd, 794 F.2d 1273 (7th Cir. 1986); Lora v. Bd. of Ed. of the City of New York, 456 F. Supp. 1211 (E.D.N.Y. 1978) ("The current New York City fiscal crisis, therefore, provides no excuse for violations of plaintiffs' rights."), vacated and reversed on other grounds, 623 F.2d 248 (2d Cir. 1980).

In short, the relief that the Plaintiffs seek in this case could not be more conservative: Plaintiffs seek merely to compel Defendants to comply with this Court's Orders, and with their

existing obligations under the law. Fiscal constraints cannot justify depriving Plaintiffs of their right to reasonable accommodations, particularly where, as here, those accommodations are desperately needed to ensure access to life-sustaining benefits and services.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for a temporary restraining order, preliminary and permanent injunctions, attorneys' fees, and such other relief as this Court may deem just and proper.

Dated: New York, New York
      June 22, 2010

Respectfully submitted,

HOUSING WORKS, INC.

By: _____
ARMEN H. MERJIAN (AM 3985)
320 W. 13th Street, 4th Floor
New York, NY 10014

ROBERT F. BACIGALUPI,
Of Counsel

HIV LAW PROJECT

By: _____
CYNTHIA KNOX (CK 2240)
15 Maiden Lane
New York, NY 10038
(212) 577-3001

15

VIRGINIA SHUBERT, ESQ.

By: _/s/ Virginia Shubert/VS_
VIRGINIA SHUBERT (VS 3724)
75 Rockefeller Plaza, 20th Floor
New York, N.Y. 10019
(212) 763-5022

EMERY CELLI BRINCKERHOFF AND
 ABADY LLP

By: _/s/ Matthew Brinckerhoff_
MATTHEW BRINCKERHOFF (MB 3552)
ZOE SALZMAN (ZS 9816)
75 Rockefeller Plaza, 20th Floor
New York, N.Y. 10019
(212) 763-5000

Attorneys for Plaintiffs

16